**FILED**

OCT 3 0 2009

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ALLISON L. DAVIS                               *
2429 Napoleon Avenue                           *
New Orleans, LA 70115                          *
                                               *
                                               *
        and                                    *
                                               *
MONIQUE ANN MEDLEY                             *
2213 Judy Drive                                *
Meraux, LA 70075                               *
                                               *
                                               *
        and                                    *
                                               *
LAURA STEFANI                                  *
241 Fairfield Avenue
Gretna, LA 70056                Case: 1:09-cv-02046
                                Assigned To : Friedman, Paul L.
                                Assign. Date : 10/30/2009
        Plaintiffs             Description: FOIA/Privacy Act

        v.                                     *
                                               *
FEDERAL EMERGENCY                              *
MANAGEMENT AGENCY                              *
500 C Street, SW                               *
Washington, DC 20472                           *
                                               *
        and                                    *
                                               *
DEPARTMENT OF HOMELAND                         *
SECURITY                                       *
Washington, DC 20528                           *
                                               *
        Defendants.                            *
                                               *
*     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

This is an action under the Privacy Act, 5 U.S.C. § 552a, et seq., as amended, and the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the

disclosure of agency records improperly withheld from plaintiffs Allison L. Davis,

Monique Ann Medley and Laura Stefani by defendants Federal Emergency Management Agency and Department of Homeland Security.

## JURISDICTION

1.   This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552a(g)(1)(D) and 28 U.S.C. § 1331.

## VENUE

2.   Venue is appropriate under 5 U.S.C. §§ 552(a)(4)(B) and 552a(g)(5) and 28 U.S.C. § 1391.

## PARTIES

3.   Plaintiff Allison Davis ("Davis") served as an employee of the defendant Federal Emergency Management Agency until her termination on April 9, 2009. Her position was Program Analyst (Counselor to the Director) for the Louisiana Transitional Recovery Office ("LATRO") in New Orleans, LA.

4.   Plaintiff Monique Medley ("Medley") served as an employee of the defendant Federal Emergency Management Agency until her termination on April 9, 2009. Her position was as a Program Analyst (Special Assistant) for the LATRO.

5.   Plaintiff Laura Stefani ("Stefani") served as an employee of the defendant Federal Emergency Management Agency until her termination on April 9, 2009. Her position was Program Analyst (Special Assistant to the Chief of Staff) for the LATRO.

6.   Defendant Federal Emergency Management Agency ("FEMA") is an agency within the meaning of 5 U.S.C. §§ 552(e) and 552a(a)(1), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

7.  Defendant Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. §§ 552(e) and 552a(a)(1), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

## FACTUAL BACKGROUND

*Employment Positions of the Plaintiffs*

8.  By letter dated May 13, 2008, FEMA informed Medley that she had been offered the position of Program Analyst (Special Assistant), GS-0301-12/1. The position was a Direct Charge CORE Appointment under the Robert T. Stafford Disaster Relief and Emergency Act ("CORE appointment"). The position was located at LATRO. Medley's ultimate area of responsibility evolved into that of a Program Manager for Employee Relations. She reported to Douglas Whitmer ("Whitmer"), the Chief of Staff ("COS") at LATRO.

9.  In February 2006, Davis began working for FEMA as a Disaster Assistance Employee ("DAE"). In June 2006, she was offered and accepted a CORE appointment as an Intergovernmental Affairs Specialist at the LATRO. On September 28, 2008, Davis was offered and accepted a CORE appointment as a Program Analyst at the LATRO. Although the position was originally titled Program Analyst, Davis' title throughout LATRO became known as "Counselor to the Director." She reported directly to then-LATRO Director, James Stark ("Stark"), through Whitmer but she did not fall within the command structure of the COS.

10. In May 2008, Stefani was offered a CORE appointment as a Program Analyst (Special Assistant) at the LATRO. Stefani's title throughout LATRO became known as "Special Assistant to the Chief of Staff."

3

*The CBS Evening News Report and Resulting Political Fallout*

11. On February 25, 2009, CBS Evening News aired an investigative report detailing allegations of bureaucratic delays and ineptitude in the distribution of funds by FEMA to the communities ravaged by Hurricane Katrina in 2005. The report focused on alleged personnel problems in FEMA's LATRO as the root cause of the bureaucratic delays and placed specific emphasis on the allegation that more than thirty (30) complaints had been filed against Whitmer, including charges of sexual harassment. Furthermore, the report included comments from Congressman Anh "Joseph" Cao (R-LA)("Congressman Cao") demanding an investigation into the activities of the LATRO and alleging that FEMA personnel at the LATRO were more concerned with their salaries than the ongoing recovery efforts.

12. By way of press releases distributed on February 26, 2009, both Congressman Cao and Senator Mary Landrieu (D-LA)("Senator Landrieu") called for the immediate resignation of Whitmer. Both press releases specifically referenced the allegation contained in the CBS Evening News investigative report that there were more than thirty complaints pending adjudication against Whitmer.

13. That same day, FEMA's then-Acting Administrator Nancy Ward ("Administrator Ward") informed Whitmer that there were three complaints arrayed against him as the principal offender and eight other complaints as the secondary supervisor. She instructed Whitmer to temporarily report to the FEMA Region VI Office in Texas.

14. On February 27, 2009, Administrator Ward held an "All Hands" meeting with the LATRO staff and stated that she was there to ensure that past leadership and management problems were resolved. She directed Tony Russell to serve as the Acting LATRO

4

Director. Per Administrator Ward's advice, Whitmer did not attend this meeting.

*FEMA's Conduct with respect to Whitmer*

15. By separate letters dated March 1, 2009, Whitmer's counsel, Mark S. Zaid ("Mr. Zaid"), requested that both Congressman Cao and Senator Landrieu immediately cease and desist from their continued calls for Whitmer's resignation. In both letters Mr. Zaid noted that relying upon one-sided allegations was both unproductive and unbecoming of Members of Congress and implored them to permit the appropriate administrative processes at FEMA to run their course prior to making any additional substantive comments on the matter. Mr. Zaid specifically highlighted that, contrary to media reports, there were only three known complaints that had been filed against Whitmer, a fact that had been verified by Administrator Ward.

16. By letter dated March 1, 2009, Mr. Zaid requested that Administrator Ward ensure that any internal administrative actions or personnel decisions concerning Whitmer follow appropriate due process and abstain from reliance upon one-sided allegations. Mr. Zaid also requested that Administrator Ward issue a clarifying supportive public statement that Whitmer had not been reassigned, much less than any disciplinary action had been initiated against him.

17. By letter dated March 9, 2009, Administrator Ward notified LATRO staff that improvements would be initiated to "re-establish a positive and productive working environment for all employees." She also stated that Mr. Russell would remain the Acting LATRO Director until a permanent person could be found.

18. At that point in time, Whitmer was not aware of any decision to permanently remove him from his position as the LATRO Chief of Staff.

5

19. By letter dated March 12, 2009, David Garratt, Acting Deputy Administrator of FEMA, confirmed Whitmer's temporary detail to FEMA Region VI was for the purpose of working on special projects. The letter explicitly stated that this was not a disciplinary action and that it would not be documented in Whitmer's Official Personnel Folder.

20. On March 18, 2009, Administrator Ward testified before the U.S. Senate Subcommittee on Disaster Recovery and verified that earlier media reports alleging that there were thirty complaints arrayed against Whitmer were not true.

21. By letter dated April 3, 2009, Mr. Zaid requested information from Administrator Ward concerning the ongoing delay in resolving Whitmer's situation. Mr. Zaid noted that the complaints that had emerged against Whitmer appeared to be largely vague and petty and were indicative more of the actions of disgruntled employees than of any misconduct by Whitmer. He also explained that FEMA's virtual silence regarding the original media reports and delay in bringing Whitmer back to his actual position at LATRO from his temporary detail to FEMA Region VI had produced an appearance of guilt on Whitmer's part.

22. By letter dated April 9, 2009, Whitmer was notified that his employment with FEMA was being terminated, effective April 24, 2009. The basis for the termination was identified as discontinuation of the position itself.

23. By letter dated April 23, 2009, Mr. Zaid appealed to Administrator Ward to reassign or appoint Whitmer to another position in FEMA commensurate with his prior position as LATRO Chief of Staff.

24. On April 24, 2009, FEMA's termination of Whitmer's employment became effective.

*FEMA's Conduct with respect to Davis, Medley and Stefani*

25. During the "All Hands" meeting, Davis asked Administrator Ward three questions: (a) whether there was going to be any public expressions of support by senior FEMA officials for the work done by FEMA personnel at LATRO, including those in management; (b) whether Whitmer would be permitted to return to his position at LATRO and publicly vindicated if the allegations against him were found to be false or unsupported by evidence; and (c) whether there was going to be an internal investigation into the source of the leaked confidential Equal Rights Office ("ERO") complaints from which the CBS Evening News had stipulated that there were more than thirty discrimination complaints against Whitmer. Administrator Ward answered with the following responses: (i) that the work of the FEMA staff would be publicly supported, although she did not clearly indicate if this was meant to include the work of FEMA management personnel at LATRO; (ii) that Whitmer had been reassigned to Texas for two weeks and that she would conduct an investigation to ascertain what had occurred at LATRO; and (iii) that there would be an investigation to ascertain who had leaked the ERO reports.

26. On March 4, 2009, at Davis' request, Administrator Ward held a private meeting with Davis, Medley and Stefani. During the meeting, Davis, Medley and Stefani verbally defended the past conduct of LATRO's management personnel (including Whitmer) with respect to the ongoing distribution of funds and assistance in rebuilding affected local communities. Administrator Ward responded that "perception was reality" and that she had to deal with the public perception of LATRO in the wake of the media reports. She also stated that she had observed an atmosphere of mistrust amongst the LATRO staff

7

with respect to the LATRO management personnel and that consequently there would have to be changes.

27. The overall impression that Davis, Medley and Stefani took from the meeting was that Administrator Ward had already made up her mind with respect to the validity of the allegations raised in the media reports and that she would consequently recommend to Secretary of the Department of Homeland Security Janet Napolitano that changes be made regarding LATRO management personnel. In particular, Administrator Ward referenced the notion that there was a FEMA national rightsizing plan with which LATRO had not been complying. To the contrary, no such national rightsizing plan existed or was made known to LATRO's management personnel prior to or subsequent to the March 4, 2009 meeting.

28. On March 19, 2009, Administrator Ward held a meeting with all LATRO senior management personnel, including Davis, Medley and Stefani. During the meeting, Administrator Ward stated that preliminary results from a "climate survey" of FEMA staff at LATRO indicated that there had been poor communication between LATRO management and the rest of the LATRO personnel. Stefani responded that any fault for poor communication rested as much upon the LATRO personnel as it did LATRO management.

29. Upon information and belief, Davis, Medley and Stefani are the only three individuals from LATRO's senior management staff that ever defended the prior actions taken by LATRO.

30. On April 9, 2009, Acting LATRO Deputy Director Libby Turner ("Acting Deputy Director Turner") asked Davis, Medley and Stefani to attend a private meeting with Administrator Ward. Robert Thorlikson, an official in the Office of Human Resources at FEMA HQ, was also present. In the meeting, Administrator Ward stated that the Office of the Chief of Staff for LATRO was being abolished in order to make LATRO "ICS complaint." Administrator Ward informed Davis, Medley and Stefani that the result of this reorganization was that their three respective positions were being eliminated and consequently their employment with FEMA was being terminated. The reorganization of LATRO's organizational structure involved nearly 1,200 people yet, upon information and belief, the only individuals whose positions were immediately eliminated were Whitmer, Davis, Medley and Stefani.

31. Despite being notified that their employment was being terminated, Administrator Ward did not provide written verification on April 9, 2009. Instead, she stated that the letters were "not ready yet."

32. Subsequent to the meeting with Administrator Ward, Davis went to the office of Acting LATRO Director Tony Russell ("Acting Director Russell") and expressed her shock at the decision to terminate Davis, Medley and Stefani. Acting Director Russell stated that he had not been informed that such a decision had been made by Administrator Ward. Upon information and belief, Administrator Ward did not even consult with Acting Director Russell or GCRO Administrator Stark regarding the decision, let alone notify them that a decision had been made.

33. On April 10, 2009, Administrator Ward, Acting Director Russell, and Acting Deputy Director Turner met with Davis regarding the termination decision. Davis insisted that her position as Counselor to the Director did not fall within the Office of the Chief of Staff and that consequently Administrator Ward's statement that Davis' termination was based upon the fact that she worked through the Office of the Chief of Staff was inherently flawed. Administrator Ward responded that the COS wrote Davis' evaluations and therefore was her supervisor but failed to recognize that the COS wrote evaluations for all LATRO senior management staff, including those who did not formally report to the COS in any capacity. None of the other LATRO senior management staff for whom the COS wrote evaluations were terminated.

34. On May 19, 2009, the *Biloxi Sun Herald* quoted a DHS spokesperson as stating that the reorganization of LATRO and the termination of Whitmer, Davis, Medley and Stefani were unrelated issues. This public statement stands in direct conflict with Administrator Ward's statements that the entire basis for the termination decisions was based upon the reorganization of LATRO, specifically the abolishment of the Office of the Chief of Staff.

*The Reality of the "Organizational Realignment" at LATRO*

35. On June 4, 2009, FEMA posted a job vacancy announcement for a Program Analyst on its website. Identified as vacancy announcement/opportunity #KAT-09-LATRO-7306-VMJ, this position, like that which Davis filled until April 24, 2009, is a Direct Charge CORE Appointment located at LATRO and would start at a GS-13 level. The purpose of this position is virtually identical to of Davis' former position. Indeed, the only noticeable difference is that whereas Davis reported directly to the LATRO Director

10

this new position reports to the Chief, Finance and Administration. Upon information and belief, this position is for all intents and purposes is the exact same position which Administrator Ward stated was being eliminated in line with the abolishment of the Office of the Chief of Staff and which served as the basis for Davis' termination.

36. On June 4, 2009, FEMA posted a job vacancy announcement for a Human Resources Specialist (Employee Relations) on its website. Identified as vacancy announcement/opportunity #KAT-09-LA-TRO-6084-KST and located at LATRO, this position entails virtually identical job responsibilities and reporting requirements as the position which Medley held until her termination on April 9, 2009. Upon information and belief, this position is for all intents and purposes the exact same position which Administrator Ward stated was being eliminated in line with the abolishment of the Office of the Chief of Staff and which served as the basis for Medley's termination. Indeed, the only identifiable difference is that Medley's position fell within the GS-301 series, known as "Miscellaneous Administration and Program Analyst Series," and this new position falls within the GS-201 series, known as "Administrative Work in the Human Resources Management Group." Prior to the announcement of this vacancy, there were no GS-201 series positions within LATRO. To date, there are at least four GS-201 series positions within LATRO and all four entail responsibilities which Medley was largely responsible for completing herself.

37. On May 7, 2009, Acting Deputy Director Turner introduced Diane Green as her "special assistant." Upon information and belief, Diane Green's position entails similar, if not identical, responsibilities as those for which Stefani was responsible in her position as Program Analyst (Special Assistant to the Chief of Staff). Indeed, for all intents and

11

purposes this position appears to be the exact same position which Administrator Ward

stated was being eliminated in line with the abolishment of the Office of the Chief of

Staff and which served as the basis for Stefani's termination.

## COUNT ONE
### (FREEDOM OF INFORMATION ACT/PRIVACY ACT – DAVIS)

38. By e-mail dated April 11, 2009, Davis submitted a formal FOI/PA request to

FEMA for copies of records pertaining to the discontinuation of discontinuation of her

position as Counselor to the Director/Program Analyst and notice of her termination.

Davis specified that responsive records belonging to the following individuals should be

construed as falling with the scope of her request: (a) Administrator Ward; (b) Secretary

Napolitano; (c) David Garratt, Acting Deputy Administrator of DHS; (d) David Trissell,

General Counsel of DHS; (e) Tracy Wareing, DHS Counselor to the Secretary; (f) Jim

Stark, Assistant Administrator, GCRO; (g) Tony Russell, Acting Director, LATRO; (h)

Libby Turner, Acting Deputy Director, LATRO; (i) Bill Vogel, Acting Deputy Director,

LATRO; (j) Pauline Campbell, EEO Program Manager; and (k) Gary Jones, Acting

Regional Administrator, Region VI Office. In her request, Davis also submitted the

following information and clarifications on the scope of the request: (i) her personal

identification information; (ii) that her position at LATRO had been Counselor to the

Director; (iii) that the search should not be limited to FEMA-originated records and

should include records in the possession of a U.S. Government contractor for the purpose

of records management; (iv) that responsive records should be produced in electronic

format; and (v) that she was willing to preemptively authorize reproduction costs of at

least $100.

39. By letter dated April 29, 2009, FEMA acknowledged receipt of Davis' request and assigned it Reference Number FEMA 09-455. FEMA noted that it construed Davis' request as an agreement to incur fees up to $25.00 absent additional authorization.

40. By e-mail dated April 30, 2009, Davis sought to clarify for FEMA that, per her original request letter, she was willing to incur up to $100 in fees, not merely $25, absent additional authorization.

41. By e-mail dated May 19, 2009, Davis sought a status update on her FOI/PA request. No response was ever received from FEMA.

42. By letter dated July 30, 2009, FEMA informed Davis that a search of Region IV, LATRO, External Affairs and Executive Secretariat and the office of Equal Employment Opportunity had resulted in the discovery four pages of responsive records. Of those four pages, FEMA indicated that two were being released in their entirety and that two were being withheld in their entirety under Exemption Five.

43. By facsimile dated August 21, 2009, Davis administratively appealed the adequacy of FEMA's search for responsive records. In her appeal, Davis disputed the notion that the identified locations were the only FEMA components reasonably likely to possess responsive records. In addition, Davis renewed her request to have all responsive records released in electronic format.

44. By facsimile dated September 28, 2009, Davis submitted a supplemental clarification to her original appeal, noting that due to an inadvertent oversight she had not indicated that she also was appealing the appropriateness of FEMA's withholdings under Exemption Five and indicated that she was doing so.

45. As twenty working days have elapsed without a determination by FEMA concerning Davis' FOIPA appeal, she has therefore constructively exhausted all required administrative remedies.

46. Davis has a legal right under the FOIA and the Privacy Act to obtain the information she seeks, and there is no legal basis for the denial by FEMA of said right.

**COUNT TWO**
**(FREEDOM OF INFORMATION ACT/PRIVACY ACT – MEDLEY)**

47. By letter dated April 12, 2009, Medley submitted a formal FOI/PA request to FEMA for copies of records pertaining to the discontinuation of her position as Program Analyst (Special Assistant) and notice of her termination. Medley specified that responsive records belonging to the following individuals should be construed as falling with the scope of her request: (a) Administrator Ward; (b) David Garratt, Acting Deputy Administrator of DHS; (c) David Trissell, General Counsel of DHS; (d) Tracy Wareing, DHS Counselor to the Secretary; (e) Jim Stark, Assistant Administrator, GCRO; (f) Acting Director Russell; and (g) Gary Jones, Acting Regional Administrator, Region VI.

48. By letter dated April 23, 2009, FEMA acknowledged receipt of Medley's FOI/PA request and assigned it Reference Number 09-454.

49. By e-mail dated May 20, 2009, Medley sought a status update on her FOI/PA request.

50. By e-mail dated May 21, 2009, FEMA informed Medley that searches for responsive records were still ongoing.

51. By letter dated August 28, 2009, FEMA informed Medley that a search of its records had identified three responsive pages of records. FEMA indicated that all three pages were being released in their entirety. The letter did not indicate which FEMA components and/or offices were searched. FEMA did not provide any information with respect to administrative appeal procedures.

52. By facsimile dated September 28, 2009, Medley administratively appealed the adequacy of FEMA's search for responsive records.

53. As twenty working days have elapsed without a determination by FEMA concerning Medley's FOIPA appeal, she has therefore constructively exhausted all required administrative remedies.

54. Medley has a legal right under the FOIA and the Privacy Act to obtain the information she seeks, and there is no legal basis for the denial by FEMA of said right.

## COUNT THREE
### (FREEDOM OF INFORMATION ACT/PRIVACY ACT – STEFANI)

55. By letter dated April 14, 2009, Stefani submitted a formal FOIPA request to FEMA for copies of records pertaining to the discontinuation of her position as Program Analyst (Special Assistant to the Chief of Staff) and notice of her termination.

56. By letter dated May 18, 2009, FEMA acknowledged receipt of Stefani's FOI/PA request and assigned it Reference Number 09-452.

57. By e-mail dated May 19, 2009, Stefani sought a status update on her FOI/PA request.

58. By e-mail dated May 20, 2009, FEMA informed Stefani that responsive records had been located and that the request was being processed.

15

59. By e-mail dated June 2, 2009, Stefani sought another status update on her FOI/PA request. No response has been received to this request.

60. By letter dated June 17, 2009, FEMA informed Stefani that a search of the LATRO had identified one responsive record that it was disclosing to Stefani in its entirety and without redactions. FEMA did not provide any information with respect to administrative appeal procedures.

61. By letter dated June 23, 2009, Stefani administratively appealed the adequacy of FEMA's search for responsive records. In her appeal, Stefani disputed the notion that LATRO was the only FEMA component reasonably likely to possess responsive records. Stefani also noted that there had been an inadvertent discrepancy in her request letter, as it had incorrectly identified her position at LATRO as "Counselor to the Director," when her position had in fact been "Program Analyst (Special Assistant to the Chief of Staff)."

62. By letter dated June 23, 2009, Stefani submitted a revised formal FOIPA request to FEMA for copies of records, including cross-references, maintained by FEMA pertaining to the discontinuation of her position as Program Analyst (Special Assistant to the Chief of Staff) and notice of her termination. Stefani indicated that the time frame of the request could be limited to records dated from January 1, 2009 to the date of acceptance of the request. Stefani clarified the scope of the search by explaining that the search should not be limited to FEMA-originated records and should be construed to include records that are currently in the possession of any U.S. Government contractors for purposes of records management. Stefani also explained that the search should be construed to include, but not be limited to, "records in the possession or control of Nancy Ward, Acting Administrator of the Federal Emergency Management Agency ("FEMA"),

Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), David Garratt, Acting Deputy Administrator of DHS, David Trissell, General Counsel of DHS, Tracy Wareing, DHS Counselor to the Secretary, Jim Stark, Assistant Administrator for the Gulf Coast Recovery Office, Tony Russell, Acting Director of the LATRO, Libby Turner, Acting Deputy Director for LATRO, Bill Vogel, Acting Deputy Director for LATRO, Pauline Campbell, EEO Program Manager for FEMA, and Gary Jones, Acting Regional Administrator, Region VI." Lastly, Stefani preemptively asserted that LATRO is not the only FEMA component reasonably likely to maintain responsive records and requested that all responsive records be produced in electronic format.

63. By letter dated July 24, 2009, FEMA acknowledged receipt of Stefani's revised FOIPA request and assigned it Request No. 09-635. FEMA's letter indicated that the request had been received on July 10, 2009 but did not explain the discrepancy between the submission of the FOIPA request by e-mail on June 23, 2009 and the apparent "receipt" of the FOIPA request on July 10, 2009.

64. By letter dated August 13, 2009, FEMA informed Stefani that a search of its records at the LATRO had identified one responsive record that it was disclosing to Stefani in its entirety and without redactions. FEMA did not provide any information with respect to administrative appeal procedures.

63. By way of a telephone conversation on or about August 17, 2009, FEMA's FOIA Office informed one of Stefani's attorneys, Bradley P. Moss, Esq., that the administrative appeal for the original request had been submitted to the wrong office. By facsimile dated that same day, Stefani submitted to the proper office her administrative appeal on her initial request challenging the adequacy of FEMA's search for responsive records.

64. By facsimile dated August 27, 2009, Stefani administratively appealed the adequacy of FEMA's search for responsive records on her second request. In her appeal, Stefani disputed the notion that LATRO was the only FEMA component reasonably likely to possess responsive records.

65. As twenty working days have elapsed without a determination by FEMA concerning Stefani's FOIPA administrative appeals, she has therefore constructively exhausted all required administrative remedies.

66. Stefani has a legal right under the FOIA and the Privacy Act to obtain the information she seeks, and there is no legal basis for the denial by FEMA of said right.

WHEREFORE, plaintiffs Allison Davis, Monique Medley and Laura Stefani pray that this Court:

(1) Orders FEMA to disclose the requested records in their entirety and make electronic copies promptly available to the plaintiffs;

(2) Ensure that, because this action is primarily pursuant to the Privacy Act, that no privacy protected responsive records are released in open court or made publicly available;

(3) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(4) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a);

(5) grant such other relief as the Court may deem just and proper.

Date:   October 30, 2009

Respectfully submitted,

Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Ilana S. Greenstein, Esq.
D.C. Federal Bar #MD9622
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C.  20036
(202) 454-2809
(202) 330-5610 fax
Mark@markzaid.com
Brad@markzaid.com
Ilana@markzaid.com

Attorneys for Plaintiff